**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL O'SHAUGHNESSY | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-5115 |
| | : | |
| NICHOLAS PALAZZO, ET AL | : | |

**MEMORANDUM**

McHUGH, J.                                                                                          OCTOBER 26, 2020

Plaintiff Daniel O'Shaughnessy asserts that he was victimized in a "prime bank" fraud scheme in which he lost $1 million dollars. He has brought an action asserting breach of contract, violations of the Securities Exchange Act, and related tort claims against five individual Defendants and three corporate Defendants located across the United States. Three Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Jurisdiction depends upon the scope and effect of a forum selection clause in the promissory note at the center of this case and upon the scope of the alleged conspiracy among the Defendants. Because I am persuaded that the clause in question has a broad reach and that substantial acts furthering the conspiracy took place in Pennsylvania, Defendants' motion to dismiss on jurisdictional grounds will be denied. [1]

### I.      Relevant Factual Background

Plaintiff alleges that in June and July of 2019 he was recruited to participate in what turned out to be a fraudulent investment scheme. Pl. Am. Compl. ¶ 1-3, ECF 9. Essentially, Plaintiff contends that he was told by Defendants that he could participate in a "Bond Deal" if he transferred $1,000,000 into an escrow account in order for Defendants to show potential investors that they

---

[1] The substantive grounds for seeking dismissal will be separately addressed.

1

could secure funding from a disinterested third party. *Id.* ¶34-37. Plaintiff alleges he was told that the $1 million would sit in an account, untouched, and would be returned to him promptly. *Id.* ¶ 39. Plaintiff discussed the purported Bond Deal on the phone with Defendants on July 2, 2019. *Id.* On July 3, 2019, Plaintiff signed a written agreement which stated that he would loan $1 million to Defendant SSPT,[2] that the $1 million would be returned to Plaintiff "no later than ten (10) business days after July 8, 2019" and that Defendant would "engage in a business transaction" on behalf of Plaintiff that would result in two payments of two million dollars each. *See* ECF 9-1 (hereinafter "the Agreement"). Plaintiff signed the Agreement, as did Defendant Palazzo as an "Authorized Representative" of Defendant SSPT Network, Inc, and Chris Miller as an "Authorized Representative" of FCM Capital Partners, Inc. *Id.* On the same day, Defendant Palazzo signed a promissory note on behalf of Defendant SSPT. *See* ECF 9-2. The promissory note stated that Plaintiff would be repaid the $1 million by July 18, 2019 and set forth guarantees and procedures in the case of default or dispute. *Id.* The Note included a Forum Selection Clause which reads, in its entirety:

> "**(d) Submission to jurisdiction:** Borrower hereby irrevocably and unconditionally (i) agrees that any legal action, suit, or proceeding arising out of or relating to this Note may be brought in the courts of the Commonwealth of Pennsylvania or of the United States of America for the Eastern District of Pennsylvania; and (ii) submits to the exclusive jurisdiction of any such court, in any such action, suit, or proceeding. Final judgment against Borrower in any action, suit, or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment. Nothing in this Section 7(d)[3] shall affect the right of Lender to: (i) commence legal proceedings or otherwise sue Borrower in any other court having jurisdiction over Borrower; or (ii) service process upon Borrower in any manner authorized by the laws of any such jurisdiction.

---

[2] SSPT is now established as JLC2019 Network, Inc. Am. Compl. ¶ 6. The company was called SSPT at the time the events transpired, the parties refer to it as SSPT, and I will refer to it as such throughout.

[3] Plaintiff notes this is a typo and should say 9(d) instead of 7(d). *See* Pl. Resp. Mot. to Dismiss at 13, ECF 40.

2

> "**(e) Waiver of venue:** Borrower irrevocably and unconditionally waives to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of this Note in any court referred to [in the previous section] and the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court."

ECF 9-2.

Plaintiff alleges that he never received the $1 million back, that the entire "Bond Deal" was a fraudulent scheme, and that Defendants never intended to return his money. Am. Compl. ¶ 40; 69. He filed this Amended Complaint, asserting breach of contract, various tort claims, and claims under the Securities and Exchange Act.

Defendants Palazzo and Robison move to dismiss all counts in Plaintiff's Amended Complaint, arguing that this Court lacks personal jurisdiction over either Defendant. Defendant SSPT argues that this Court lacks personal jurisdiction as to all but one count of the amended complaint, and likewise moves to dismiss the other eleven counts.[4] For the reasons that follow, I find that I may exercise personal jurisdiction over SSPT, Palazzo and Robison.

## II.     Standard of Review

Plaintiff bears the burden of showing that personal jurisdiction exists over the Defendants. *See Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). The "starting point" in determining "whether personal jurisdiction can be asserted over a nonresident defendant" is the long-arm statute of the forum state. *Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 200 (3d Cir. 1998). The Pennsylvania long-arm statute provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with

---

[4] Defendants Richard Orchard, Paul Chapman, Jon Barry Thompson, Citrof LLC, and FTL Holding, LLC, some of whom failed to appear after being served with Plaintiff's Amended Complaint, have not moved to dismiss this action for lack of personal jurisdiction.

3

this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). I therefore must "look to federal constitutional doctrine to determine [Defendants'] susceptibility to personal jurisdiction in Pennsylvania." *Vertotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996).

General personal jurisdiction exists when a person or company is "at home" in the forum state. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal quotations and alterations omitted). Personal jurisdiction can be established through consent to jurisdiction, including through forum selection clauses. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985).

When reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

### III. Analysis

#### a. Personal Jurisdiction Over SSPT

Defendant concedes that I may exercise personal jurisdiction over SSPT as to count twelve of Plaintiff's Amended Complaint, for breach of contract of the promissory note. Def. Mot. to Dismiss at 13, ECF 34. Defendant accepts that due to the forum selection clause in the promissory note, claims arising from that note are properly litigated in this Court. *Id.* However, Defendant argues that all other claims must be dismissed against SSPT for lack of personal jurisdiction. *Id.*

Defendant SSPT is a Delaware Corporation with its principal place of business in California. Am. Compl. ¶ 6. Plaintiff has not alleged that SSPT has such "continuous and systematic" affiliations with Pennsylvania as to render it at home in this state, and so general jurisdiction over SSPT does not exist. *Goodyear Dunlop Tires*, 564 U.S. at 919. Plaintiff alleges that specific jurisdiction exists over SSPT by virtue of the forum selection clause in the promissory note and argues that all counts have "a logical or causal connection" to the note. Pl. Resp. Mot. to Dismiss at 13-15, ECF 40.

The forum selection clause in the promissory note states that "any legal action, suit, or proceeding *arising out of* or *relating to* this Note may be brought" in this Court. ECF 9-1 (emphasis added). The note makes clear that SSPT "irrevocably and unconditionally" "submits to the exclusive jurisdiction" of this Court, and relatedly "irrevocably and unconditionally waives" any objection to venue. *Id.*

The mere existence of non-contractual claims is not sufficient to evade a forum selection clause. *See Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) (per curiam) ("[P]leading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms."); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983) (applying forum selection clause to related tort claims as well as to contract claims).

Rather, courts should look to the language of the forum selection clause to determine how broadly the clause should be read.[5] The phrase "relating to" is broad and can include a dispute

---

[5] Neither party has argued that the forum selection clause should be interpreted by Pennsylvania, California, or any other state law. As such, I will "therefore base [my] decision on general contract law principles." *John Wyeth & Bro. Ltd.*, 119 F.3d at 1074. Nonetheless, Pennsylvania law was designated as the choice of law in the promissory note, and Pennsylvania law regarding forum selection clauses comports with the reading applied here. *See, e.g., Patriot Commercial Leasing Co., Inc. v. Kremer Restaurant Enterprises, LLC*, 915 A.3d 647, 650 (Pa. Super. Ct. 2006) (noting "the modern trend is to uphold the enforceability of forum selection clauses where those clauses are clear and unambiguous" and collecting cases); *Provident Mut. Life Ins. Co. of Philadelphia v. Bickerstaff*, 818 F. Supp.

whose origin "has some logical or causal connection" to the agreement. *John Wyeth & Bro. Ltd. v. Cigna Itn'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (internal quotations omitted); *see id.* (rejecting plaintiff's assertion that a claim must "grow out of" the agreement to be covered by the forum selection clause because this argument "distorts the language" of the clause, which covered disputes "arising in relation to" the contract); *see also In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 524-25 (3d Cir. 2019) (noting, in the context of an arbitration clause, the breadth of the term "relating to").

Plaintiff seeks return of the $1 million he loaned to Defendant, and whose return was promised through the promissory note. Although the parties signed an additional Agreement relating to the loan, that Agreement was signed on the same day as the Promissory Note and does not contain a competing forum selection clause. *See* ECF 9-1. Given the broad, unambiguous language of the forum selection clause, SSPT is bound by that clause as to all claims brought by Plaintiff in this case. SSPT's motion to dismiss for lack of personal jurisdiction is therefore denied.

### b. Personal Jurisdiction over Mr. Palazzo

Defendant argues that even if I can exercise personal jurisdiction over SSPT due to the forum selection clause, I cannot exercise personal jurisdiction over SSPT's President, Mr. Palazzo, as he is not bound by the clause. Def. Mot. to Dismiss at 11, ECF 34.

Plaintiff acknowledges that Mr. Palazzo is domiciled in California, Am. Compl. ¶ 5, but argues that I have specific personal jurisdiction because Mr. Palazzo is bound by the forum selection clause as a "closely related" party. Pl. Resp. Mot. to Dismiss at 15-16, ECF 40.

---

1116, 118 (E.D. Pa. 1993) (applying Pennsylvania law and noting that where a forum selection clause is valid, the party arguing against being bound bears a "heavy burden").

Non-signatory third parties can at times be bound by a forum selection clause. The Third Circuit recently explained that there are four "substantive issues that bear on whether" a forum selection clause applies to a non-signatory third party. *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 59 (3d Cir. 2018). These include : (1) whether the parties are "intended third party beneficiaries" or "closely related parties" to the agreement; (2) whether "such enforcement was foreseeable to the non-signatory"; (3) whether "the dispute itself [falls] within the scope of the forum selection clause"; and (4) "whether the *Atlantic Marine*- modification to the § 1404(a) analysis applies when non-signatories are bound by a forum clause." *Id*.

As discussed above, I have already found that the dispute here falls within the scope of the forum selection clause. The fourth consideration is not relevant here because neither party has moved for a transfer under 28 U.S.C. § 1404. I will therefore focus on the first two substantive issues.

The second consideration, foreseeability, is the most important. Before even deciding whether the non-signatory is "closely related" to the contract, "foreseeability is a prerequisite to applying the closely related parties doctrine." *Id.* at 64. In *McGraw-Hill* the Third Circuit set a relatively high bar for foreseeability, holding that "[a] foreseeability finding in the context of forum selection clauses must have some evidentiary basis, other than pure speculation, that the party sought to be bound had an awareness of the clause, its contents, and that it might be defensively invoked." *Id.* at 65.

Here, Plaintiff has established that Mr. Palazzo had an awareness of the clause, its contents, and that it might be defensively invoked. Plaintiff alleges that Mr. Palazzo is the President of SSPT, that he was personally involved in the recruitment of Plaintiff and the drafting of the documents, and that Mr. Palazzo personally executed the promissory note. Am. Compl. ¶¶ 6; 38;

7

53; ECF 9-2.  Plaintiff alleges that after his money had been improperly disbursed, including to Mr. Palazzo, Mr. Palazzo had a phone call with Plaintiff where he "confirmed that SSPT received the $140,035 and described the wire as a commission" payable to him and his company.  Am. Compl. ¶ 66.  Plaintiff further alleges that Mr. Palazzo communicated directly with Plaintiff via text message at least five times about the status of the funds, falsely assuring him that the money would be returned soon.  *Id.* ¶¶ 94-98.  According to Plaintiff, at the time that the promissory mote was drafted, Mr. Palazzo already planned to improperly disburse the funds, as evidenced by the disbursement two days later.  *Id.* ¶ 54.  Plaintiff has therefore alleged that Mr. Palazzo had an awareness of the clause and its contents, having personally executed the note, and was aware that it might be defensively invoked, given his alleged participation in the scheme.

"In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement."  *McGraw-Hill*, 909 F.3d at 63 (quoting *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA,* 779 F.3d 214, 219 (3d Cir. 2015)).  Plaintiff has alleged that Mr. Palazzo is the President of SSPT, that he was directly involved in the negotiations, and that he received a direct benefit from the agreement, in the form of the $140,035 commission.  Plaintiff has shown that Mr. Palazzo is so closely related to his own company and to the promissory note that he is fairly bound by the forum selection clause.  Mr. Palazzo's motion to dismiss for lack of personal jurisdiction is therefore denied.

    **c.  Personal Jurisdiction Over Mr. Robison**

Plaintiff argues that Mr. Robison is also a closely related party and is thus bound by the forum selection clause. Applying the same analysis explicated above, however, shows that Mr.

Robison is not bound by the forum selection clause. Nonetheless, I find that I may exercise personal jurisdiction over Mr. Robison as an alleged co-conspirator of the scheme.

### i. The Forum Selection Clause

Plaintiff alleges that Mr. Robison is an individual domiciled in Texas. Am. Compl. ¶ 7. Plaintiff further alleges that Mr. Robison was "at all relevant times, an agent of Defendant SSPT." *Id.* Although Plaintiff does not explain exactly in what capacity Mr. Robison worked for SSPT, Plaintiff cites to at least twelve communications from Mr. Robison where he purported to speak on behalf of SSPT and Mr. Palazzo regarding the return of Plaintiff's money. *Id.* ¶¶ 77-92. But even assuming that Mr. Robison worked for SSPT, Plaintiff does not allege that Mr. Robison was involved in the drafting of the Agreement or the promissory note, and his signature does not appear on either document. ECF 9-1; 9-2. As discussed above, in order to hold that Mr. Robison is a closely related party such that he should be bound by the forum selection clause, I must find there is foreseeability, which "must have some evidentiary basis, other than pure speculation, that the party sought to be bound had an awareness of the clause, its contents, and that it might be defensively invoked." *McGraw Hill*, 909 F.3d at 65. Plaintiff has not made that showing here.

### ii. Co-Conspirator Jurisdiction

Plaintiff goes on to argue that there is "co-conspirator jurisdiction" over both Mr. Palazzo and Mr. Robison. Pl. Resp. Mot. to Dismiss at 16-17. "Under Pennsylvania law personal jurisdiction of a non-forum coconspirator may be asserted [] where a plaintiff demonstrates that substantial acts in furtherance of the conspiracy occurred in Pennsylvania and that the non-forum coconspirator was aware or should have been aware of those acts." *Aluminum Bahrain B.S.C. v. Alcoa Inc.*, 866 F. Supp. 2d 525, 528 (W.D. Pa. 2012) (internal citations omitted). "Merely belonging to a civil conspiracy does not make a member subject to the jurisdiction of every other

member's forum." *Doe v. Hesketh*, 15 F. Supp. 3d 586, 595 (E.D. Pa. 2014) (quoting *Mass. Sch. of Law v. ABA*, 846 F. Supp. 374, 379 (E.D. Pa. 1994)). Rather, the plaintiff must allege with specificity how co-conspirators are related to each other. *Id.*

Plaintiff is domiciled in Florida, and states that he was in New Jersey when Defendants recruited him and signed contracts on July 2 and 3, 2019. Am. Compl. ¶¶ 4; Pl. Resp. Mot. to Dismiss at 20. Several non-moving Defendants are domiciled or have their principal place of business in Pennsylvania. Am. Compl. ¶¶ 8, 10-12. There is one principal act alleged to have taken place in Pennsylvania— the sending of the instructions for the disbursement of money by non-movant Mr. Thompson from Bethlehem, Pennsylvania to non-defendant Mr. Cumbie in Florida. *Id.* ¶ 64; ECF 9-5. Defendant FTL Holdings, a corporation with its principal place of business in Easton, Pennsylvania, is alleged to have received $10,000 from this disbursement, albeit in a bank account located in New York. *Id.*

"Although the Third Circuit has not taken a firm position on [the co-conspirator jurisdiction] theory . . . other federal courts of appeals and federal district courts have." *Kyko Global, Inc. v. Prithvi Info. Sols. Ltd.*, No. 2:18-cv-01290, 2020 WL 1159439, at *31 (W.D. Pa. Mar. 10, 2020). District courts in this circuit have declined to exercise co-conspirator jurisdiction where plaintiffs fail to allege any substantial act occurring within Pennsylvania or where Plaintiff has not alleged that the defendant had any reason to know about these activities. *See, e.g., Aardvark Event Logistics, Inc. v. Bobcar Media LLC,* No. 16-5873, 2017 WL 59059, at * 7 (E.D. Pa. Jan. 5, 2017) ("In this case, plaintiff has not identified a single act, let alone substantial acts, that took place in Pennsylvania in furtherance of the alleged conspiracy."); *Doe*, 15 F. Supp. 3d at 596–602 (declining to exercise personal jurisdiction over three persons charged with child pornography crimes because they neither accessed nor exchanged child pornography in

Pennsylvania); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc*., 14 F. Supp. 2d 710, 720 (M.D. Pa. 1998) ("Neither the allegations nor the exhibits concern activities that occurred within Pennsylvania."); *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 398, 412 (E.D. Pa. 1981) (finding that the facts alleged were not "enough for the Court to find that [defendants] were, or should have been aware, of the alleged activities of the [defendant] in Philadelphia and therefore to exercise in personam jurisdiction on a conspiracy theory.").

In contrast, where acts with significance for the conspiracy take place in Pennsylvania, district courts have found that co-conspirator jurisdiction exists. *See, e.g.*, *Kyko Global, Inc*., 2020 WL 1159439 at *32 (finding substantial acts for co-conspirator jurisdiction where plaintiffs alleged that defendants illicitly wired bond funds from a bank account in Pittsburgh); *Calhoun v. Invention Submission Corp*., No. 18-1022, 2019 WL 1547372 at *7 (W.D. Pa. Apr. 9, 2019) (finding the court had co-conspirator jurisdiction where defendant had an agreement with a Pennsylvania company and received referrals connected to the conspiracy through that company); *see also Aluminum Bahr. B.S.C.*, 866 F. Supp. 2d at 528-29.

The sending of the closing instructions from Pennsylvania which directed the disbursement of the funds was a substantial act in furtherance of the conspiracy and gives rise to co-conspirator jurisdiction over Mr. Robison. Indeed, Plaintiff alleges that the disbursement of the money is key to showing that Defendants never intended to return his investment and shows that Defendants were lying when they made "lulling statements" throughout July and August of 2019. Am. Compl. ¶¶ 40, 54, 93, 99.

Accepting Plaintiff's allegations as true (which I am bound to do at this juncture), Plaintiff has shown that Mr. Robison "was aware or should have been aware" of these substantial acts. *Aluminum Bahr. B.S.C.*, 866 F. Supp. 2d at 528. Plaintiff alleges that Mr. Robison forged

Plaintiff's signature on the closing instructions and sent those instructions to Mr. Thompson to facilitate the disbursement. Am. Compl. ¶¶ 59-64. Mr. Robison vigorously denies this allegation. Def. Mot. to Dismiss at 3, ECF 37. Given that Plaintiff does not provide any underlying facts to support the allegation that Mr. Robison (as opposed to any other co-defendant) forged his signature, I would be hesitant to find that Mr. Robison was aware of these acts in Pennsylvania on this basis alone.

But I do not need to rely on this allegation alone, because Plaintiff has alleged numerous other activities that show Mr. Robison's active participation in the scheme which, if true, mean he was aware or should have been aware of the closing instructions sent from Pennsylvania. Plaintiff alleges that Mr. Robison was instrumental in initiating the scheme by leading the phone call on July 2, 2019 where he explained the "Bond Deal" and represented that Plaintiff's money would remain secure in an account. Am. Compl. ¶ 39. Plaintiff further alleges that Mr. Robison directly communicated with Plaintiff at least twelve times over a period of five weeks and provided false assurances that the money would be returned soon. Am. Compl. ¶¶ 77-92. A letter sent via text message on July 30, 2019 from Robison to Plaintiff stated that his "NO payments have been made to any person or party" from his funds, despite the disbursement of the money several weeks earlier. *Id.* ¶ 83; ECF 9-5. A text message sent by Robison to Plaintiff on August 20, 2019 stated that Plaintiff's deposit "has NEVER gone anywhere but escrow." Am. Compl. ¶ 87. On August 29, 2019, Mr. Robison sent a text message to Plaintiff stating that "everything has already been DONE" and the wire returning his money had been sent. Am. Compl. ¶ 92. This wire allegedly never existed, however, and Plaintiff's money was never returned. *Id.* ¶ 93. If, as Plaintiff alleges, his money was disbursed on July 5, 2019, then these statements were patently false. This alleged series of falsehoods could give rise to an inference that Mr. Robison knew about the disbursement

and was providing false assurances to Plaintiff in furtherance of the conspiracy. At this stage in the litigation, "plaintiff is entitled to have [his] allegations taken as true and all factual disputes drawn in [his] favor." *Miller Yacht Sales*, 384 F.3d at 97.  Plaintiff has sufficiently alleged that Mr. Robison was an "active and key participant" in the conspiracy and thus that he was, or should have been aware of the substantial acts in furtherance of that conspiracy in Pennsylvania. *See Aluminum Bahr. B.S.C.*, 866 F. Supp. 2d at 529 (finding that plaintiff "sufficiently alleged that [defendant] was an active and key participant in the enterprise and thus was, or should have been aware of those acts.").

Beyond the closing instructions, Plaintiff alleges additional acts of which Robison was or should have been aware that occurred in Pennsylvania, including: (1) the sending of lulling statements from Robison to non-party Mr. Blundetto, a Pennsylvania resident, with instructions to forward the messages to Plaintiff, Am. Compl. ¶¶ 78, 81; (2) the receipt of $10,000 from the disbursed funds by Defendant FTL Holdings, whose principal place of business is in Pennsylvania, Am. Compl. ¶ 64; (3) the recruitment by Defendants of non-party Mr. Blundetto, a Pennsylvania resident, to the scheme, Am. Compl. ¶¶ 34-36; (4) the sending of an email to Mr. Blundetto proposing that Blundetto solicit an additional $2.1 million from Plaintiff to participate in a second scheme, Am. Compl. ¶¶ 102-104.  Without deciding whether any of these actions standing alone could give rise to co-conspirator jurisdiction, taken together they represent substantial acts in furtherance of the conspiracy.

Accordingly, I find that I may exercise personal jurisdiction over Mr. Robison.  Given Robison's alleged knowing and purposeful involvement with the in-forum defendants, and his alleged actions taken within the forum, I find that exercising personal jurisdiction in this District

"will not offend traditional notions of fair play and substantial justice." *Pennzoil Prods. Co.*, 149 F.3d at 201 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction will be denied. An appropriate order follows.

        /s/ Gerald Austin McHugh
United States District Judge