# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL O'SHAUGHNESSY | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-5115 |
| | : | |
| NICHOLAS PALAZZO, ET AL | : | |

McHUGH, J.                                                                                                    NOVEMBER 10, 2020

## MEMORANDUM

Plaintiff alleges that he was recruited by Defendants to participate in a fraudulent "prime bank" scheme. *See* Am. Compl. ¶¶ 33-39, ECF 9. He alleges that Defendants misrepresented: (1) that a bond deal existed in which Plaintiff could participate by depositing money into an escrow account, and (2) that Plaintiff's money would remain secure and untouched before being returned to him within ten days. *Id.* at ¶ 39. Plaintiff alleges that he signed an "Investment Agreement" which was accompanied by a Promissory Note for $1 million signed by Defendant Nicholas Palazzo as the President of Defendant SSPT. *Id.* ¶¶ 44-53; ECF 9-1, 9-2. Plaintiff alleges that just two days after he deposited the $1 million, Defendants improperly disbursed his money amongst themselves using a forged letter. Am. Compl. ¶¶59-64; ECF 9-4. Finally, after it became clear that Plaintiff's money was not being returned, Plaintiff alleges that Movants misrepresented the status of his money through lulling statements for at least six weeks. Am. Compl. ¶¶ 77-98. The facts are discussed in greater detail in my memorandum denying Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc #60).

Defendants have moved to dismiss on a variety of grounds.[1] In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established

---

[1] Although I do not separately address each of Defendants' arguments, I have considered them in my resolution of the motions.

1

standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Allegations of fraud must be "pled with particularity" under Federal Rule of Civil Procedure 9(b). *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 347 (3d Cir. 2010). The motions are denied in all respects.

Count One of Plaintiff's Amended Complaint alleges Fraud in violation of section 10(b) of the Securities Exchange Act and Rule 10b-5. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Defendants objections to this Count lack merit. Plaintiff has properly alleged that "defendants made a misstatement or an omission of material fact with scienter in connection with the purchase or the sale of a security upon which plaintiff[] reasonably relied and plaintiff's . . . reliance was the proximate cause of [his] injury." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 251 (3d Cir. 2009). It is well established that even when the purported "security" did not exist— such as in a fraudulent prime bank scheme— defendants may still be liable for fraud in violation of this section. *See SEC v. Cooper*, 142 F. Supp. 302, 315 (D.N.J. 2015).

Plaintiff has properly alleged scienter under this Count. Scienter is "a mental state embracing intent to deceive, manipulate or defraud." *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 192 (3d Cir. 2000). The Third Circuit has "held that the scienter required for securities fraud includes recklessness" and has defined recklessness as "an extreme departure from the standards of ordinary care [] which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.*; *see also Cooper*, 142 F. Supp. at 313 (explaining that "[b]ecause 'Prime Bank' instruments do not exist, courts have held that promoters of such schemes acted, at a minimum, recklessly" and collecting cases). I conclude that "*all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (emphasis in original).

Count Two alleges Offer and Sale of Unregistered Securities in violation of sections 5(a), 5(c) and 12(a)(1) of the Securities Exchange Act. *See* 15 U.S.C. §§ 77e(a), 77e(c), 77l(1). Plaintiff has alleged that "(1) no registration statement was in effect as to the security; (2) the defendants offered to sell or sold the security; and (3) defendants used the means of interstate commerce in connection with the offer or sale." *SEC v. Infinity Grp. Co.*, 993 F. Supp. 324, 326-27 (E.D. Pa. 1998). The burden then "shifts to the defendants to demonstrate that the securities were exempt from the registration requirement." *Id.* (citing *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953)); *see also SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 807 (11th Cir. 2015); *Zacharias v. SEC.*, 539 F.3d 458, 464 (D.C. Cir. 2009). Defendants argue they are exempt because provisions of section 77e do not apply to "transactions by any person other than an issuer, underwriter, or dealer." 15 U.S.C. § 77d(a)(1). However, factual discovery is needed to determine whether defendants acted as dealers, and it is premature to dismiss on this basis. *See, e.g.*, *Big Apple Consulting USA, Inc.*, 783 F.3d at 809 (examining evidence of defendant company's usual activities and profits to determine whether the company qualified as a dealer); *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 12 (D.D.C. 1998) (holding that "regularity of participation [in securities trading] is the primary indicia" of whether a defendant acted as a dealer).

Count Three alleges Common Law Fraud and Count Six alleges Negligent Misrepresentation. Both parties agree that the elements for each claim are the same, except that Negligent Misrepresentation requires a showing of scienter. *See* Def. Mot. to Dismiss at 23-24, ECF 34; Pl. Resp. Mot. to Dismiss at 32, ECF 40; *Fox Int'l Relations v. Fiserv Sec. Inc*, 490 F. Supp. 2d 590, 606-07 (E.D. Pa. 2007). Defendants argue that these counts are fatally defective. I disagree. In alleging Common Law Fraud, Plaintiff has properly alleged facts showing "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge

3

of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R.*, 870 F.3d 244, 255 (3d Cir. 2017) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)). In support of his claim for Negligent Misrepresentation, Plaintiff has properly alleged "an intention by the maker [of the material misrepresentation] that the recipient will thereby be induced to act." *Fox Int'l Relations*, 490 F. Supp. at 607.

Counts Four and Five allege Conspiracy to Defraud and Aiding and Abetting of Fraud. Once again, Defendants' objections lack merit. Plaintiff has alleged facts showing "that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means" in support of Count Four. *See Skipworth v. Lead Indus. Ass'n, Inc.*, 690 A.2d 169, 174 (Pa. 1997). Regarding Count Five, and contrary to Defendants' argument, Pennsylvania law recognizes a cause of action for Aiding and Abetting of Fraud. *See Kilbride Invs. Ltd. v. Cushman & Wakefield of Pa., Inc.*, 294 F. Supp. 3d 369, 384 (E.D. Pa. 2018) ("Beginning with the Pennsylvania Supreme Court's decision [in *Skipworth*, 690 A.2d at 173-74] . . . Pennsylvania courts have allowed claims for the provision of substantial assistance or encouragement to another tortfeasor."). Plaintiff has properly alleged facts supporting both these claims.

Count Seven alleges Conversion, while Counts Eight and Nine allege Conspiracy to Commit and Aiding and Abetting of Conversion. Plaintiff properly pleads facts supporting these claims. *See Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 779-80 (E.D. Pa. 2008) ("Under Pennsylvania law, common law conversion requires the 'deprivation of another's right of property . . . or other interference therewith, without the owner's consent and without legal justification.'")

(citing *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995)). Contrary to Defendants' argument, money can be the subject of the conversion. *See Pearl Assurance Co. v. Nat'l Ins. Agency, Inc.*, 30 A.2d 333, 337 (Pa. Super. Ct. 1943). Simple failure to pay a debt is not a conversion, but where money is akin to property, interference with that money is conversion. *See*, *e.g., Bernhardt v. Needleman*, 705 A.2d 875, 879 (Pa. Super. Ct. 1997) (holding that withholding of fees from a settlement was properly alleged as conversion); *Rubin Quinn Moss Heaney & Patterson, P.C. v. Kennel*, 832 F. Supp. 922, 932 (E.D. Pa. 1993) (holding that defendant's disbursement of his client's funds from an escrow account was conversion); *Commonwealth v. Bixler*, 79 Pa. Super. 295, 297 (1922) (holding that defendant was not liable conversion where defendant had not promised to return the money "in kind" but rather "had the undoubted right to use of it as he saw fit" and to refund money out of the proceeds of stock to be sold).

Here, Plaintiff alleges that he was told to send $1 million dollars "to demonstrate SSPT's capital and, thereby, allow SSPT to participate in the Bond Deal" and that his deposit "would not be placed at risk, and would remain in the [escrow] account until the Bond Deal was completed, at which time the $1 million would be transferred back" to Plaintiff. *See* Am. Compl. ¶ 39. Because Plaintiff's money was meant to sit in account, unspent, and be returned "in kind" it was property susceptible of conversion. *See Bixler*, 79 Pa. Super. at 297.

Finally, although Movant Defendants argue that they were not personally involved in the disbursement of funds, they are alleged to have benefitted from the disbursement and, more importantly, are alleged to be members of the conspiracy that directed the disbursement. *See Church Mut. Ins. Co. v. All. Adjustment Grp.*, 102 F. Supp. 3d 719, 732 (E.D. Pa. 2015) ("Once

there is an agreement, a conspirator may be liable for overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.") (citations omitted).[2]

Count Ten alleges Unjust Enrichment. Plaintiff has properly alleged that "(1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit." *Global Ground Support, LLC v. Glazer Enters.*, 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008). Although Defendants correctly note that it would be improper to submit to the jury both a contract claim, *see* Counts Eleven and Twelve, *infra*, and the quasi-contract claim of Unjust Enrichment, it would be premature to dismiss alternate theories of liability for that reason at this juncture. *See* Fed. R. Civ. P. 8(a)(3) (pleadings "may include relief in the alternative or different types of relief."); 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

Count Eleven alleges Breach of Contract of the investment agreement against SSPT only, and Count Twelve alleges Breach of Contract of the promissory note against SSPT only. Both parties agree that Count Twelve will be precluded if I deny SSPT's motion to open the confessed judgment in the closely related case dealing with a Confession of Judgment under that note (Case No. 19-5114). At this point, however, while that motion remains pending, I will not dismiss Count Twelve or Count Eleven. Plaintiff properly pleads breach of contract under both counts.

I further agree with Plaintiff that the Economic Loss Doctrine and Gist of the Action Doctrine are inapplicable in this case. The gist of the action doctrine applies when a plaintiff brings "a purported tort claim," but "the true gist or gravamen of the claim [is] for breach of contract which existed between the parties." *Bruno v. Erie Ins. Co.*, 106 A.3d 46, 68 (Pa. 2014). The economic

---

[2] This applies equally to Defendants' arguments regarding material misrepresentations as related to Counts One, Three, and Six.

loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002). These doctrines are "effectively coextensive under Pennsylvania law." *Sheridan v. Roberts Law Firm*, No. 19-00467, 2019 WL 6726469, at *3 (E.D. Pa. Dec. 11, 2019) (citing to *Dittman v. UPMC*, 196 A.3d 1036, 1053 (Pa. 2018)). Courts in Pennsylvania have "consistently regarded the nature of the duty alleged to have been breached . . . to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." *Bruno v. Erie Ins. Co.*, 106 A.3d 46, 68 (Pa. 2014).

As alleged, Defendants' duty to Plaintiff did not arise merely through a contract. Rather, Plaintiff alleges tort claims arising out of Defendant's general duty of care. *See Norfolk S. Ry. Co.*, 870 F.3d at 256 (holding that because plaintiff's claim arose from defendant's "fraudulent misrepresentations and omissions" the claim involved "a broader social duty owed to all individuals" and so the gist of the action doctrine was inappropriate); *Skold v. Galderma Labs., L.P.*, 99 F. Supp. 585, 601-02 (E.D. Pa. 2015) (same). The gist of the action and economic loss doctrines therefore do not apply.

An appropriate order will be entered.

                                                   /s/ Gerald Austin McHugh
                                                   United States District Judge